SULLIVAN REALTY ORGANIZATION, INC., Appellant, v SYART TRADING CORP. et al., Defendants, and CROW-CRIMMINS-WOLFF & MUNIER, Respondent.

Second Department, June 25, 1979

### APPEARANCES OF COUNSEL

*Wekstein & Fulfree (Morton N. Wekstein* of counsel), for appellant.

*Sacks, Montgomery, Pastore & Levine (Jeffrey A. Aronson* of counsel), for respondent.

### OPINION OF THE COURT

Suozzi, J.

The issue on this appeal is whether personal service was properly effected upon a corporate joint venturer. Contrary to the holding of Special Term, we hold that personal service was properly effected.

This is an action to recover a real estate broker's commission. The complaint alleged that the seller and the buyer, a joint venture named Crow-Crimmins-Wolff & Munier, each agreed to pay one half of the plaintiff's fee. Plaintiff attempted to commence the action against the defendant buyer by serving a copy of the summons upon a corporation named Thomas Crimmins Construction Co., one of the joint venturers. The answer of Crow-Crimmins-Wolff & Munier set up the defense of lack of personal jurisdiction. Defendant Foreman moved for summary judgment and plaintiff cross-moved to strike the defense asserted by Crow-Crimmins-Wolff & Munier. The motion was denied and a hearing was ordered on the cross motion.

The affidavit of service was made by one Robert Marcus and states that on April 7, 1976, he personally delivered a copy of the summons and complaint to Rose Toro, a "Manager" of the Thomas Crimmins Construction Co. at the offices of that corporation. At the hearing Marcus testified that he was a professional process server, that he did not specifically recall the service and that there was nothing in particular about it that stood out in his mind. He, therefore, was permitted to

testify as to his usual procedure in making service upon a corporation as follows: "I go in, I don't hide the fact that I have a summons. I ask for a manager or someone authorized to accept process." On this occasion he did the same thing. A woman in the office told him she was authorized to accept process and he served her. Marcus further testified that he never made service upon a person who he did not believe was authorized to accept the same and if a receptionist or secretary told him that he or she was not authorized to receive service, he would come back later.

Rose Toro was called as a witness by the plaintiff and testified that she was employed by the Thomas L. Crimmins Construction Co. as a secretary-receptionist—a sort of "Gal Friday". Her job was in the nature of an all purpose executive-type secretary and, as part of her duties, she answered the telephone and performed secretarial tasks for the 10 people employed in the offices of the corporation. She testified that she normally received any papers served upon the construction company and it was her practice to make a note of the time she received those papers and then turn them over to the person in the office who was responsible for handling that type of matter. No one ever directed her to receive the service of papers and although she was served with copies of summonses approximately five or six times per year, no one had ever told her that she was not to receive process in the future. She had been employed by the corporation for approximately two years at the time the summons in question was served and prior thereto she had accepted service of approximately a dozen other summonses.

Ms. Toro remembered receiving the summons in this case which was served by Mr. Marcus. She made a record of the time that she received the summons and subsequently turned it over to the corporate comptroller, Mr. Mango. On cross-examination, Ms. Toro testified that she was not a director, officer, managing agent, general agent, cashier or assistant cashier for the Thomas Crimmins Construction Co. and that she had never been specifically authorized by appointment to accept service for that company. On occasions when a process server came to the office and asked to see an officer, director or managing agent, she accepted service of the summons if those persons were not present.

At the conclusion of cross-examination, Ms. Toro was questioned by the court and testified that when she accepted

service of the summons in this case none of the corporate officers were present. The Thomas Crimmins Construction Co. did not have a managing agent or manager in the office.

Upon this evidence, Special Term ruled that the plaintiff had failed to prove by a preponderance of the credible evidence that process had been served in accordance with the applicable statute. Accordingly, it denied plaintiff's cross motion to strike the defense of lack of in personam jurisdiction and thereupon dismissed the complaint against the defendant joint venture.

■ Service upon a joint venture may be made by personally serving process upon any one of the joint venturers (see CPLR 310; *John's, Inc. v Island Garden Center of Nassau,* 49 Misc 2d 1086). Here the joint venturer that plaintiff chose to serve was a domestic corporation and it is argued by respondent that personal service was therefore required to be made in accordance with CPLR 311 (subd 1). That section provides that service upon a corporation shall be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service".

In support of respondent's argument that service of process was not in accordance with the statute, the dissenters rely on *McDonald v Ames Supply Co.* (22 NY2d 111) and *Isaf v Pennsylvania R. R. Co.* (32 AD2d 578), for the proposition that the public policy of the State requires strict compliance with the statute and that a relaxation of the strictures of CPLR 311 would promote carelessness in the service of process and increase the risk of defaults.

The dissenters' concern about a relaxation of the strictures of CPLR 311 would be understandable if the person served was not an employee of the defendant corporation and the corporation denied ever having received the summons. However, the undisputed evidence is quite to the contrary. It was clearly established at the traverse hearing that the summons was in fact served upon a secretary-receptionist of the Thomas Crimmins Construction Co., and then given to the corporate comptroller, an officer who meets the requirements of CPLR 311. It was also adduced at the hearing, without contradiction, that in the performance of her duties as an executive-type secretary, Ms. Toro normally received all legal papers served upon the construction company and regularly turned the papers over to the appropriate officer of the corporation. She

had engaged in this practice approximately a dozen times during the two years that she had been employed and at no time did her employer ever tell her not to accept summonses in the future.

The testimony of Ms. Toro raised a strong inference that she had the authority to accept service of process for the company. Under these circumstances, the respondent clearly had a duty to rebut her testimony and the inference contained therein and it failed to do so.

█ It is, therefore, crystal clear that the objective of CPLR 311, i,e., that a defendant corporation actually receive the summons, was in fact accomplished here. By resorting to such an overly strict interpretation to sustain the respondent's position, the dissenters do little, if anything, to enhance or promote the underlying State policy upon which they premise their determination.

Nor are the two cases relied upon by the dissenters at all persuasive for their position.

In *McDonald v Ames Supply Co.* (22 NY2d 111, *supra*), service was made upon a receptionist who was *not* an employee of the defendant corporation. In holding that the service was invalid even though the summons was later delivered to a proper person, the Court of Appeals distinguished those cases in which the process server "acted reasonably in placing the summons within reach of the defendant" *(supra,* p 115) and specifically cited with approval *Green v Morningside Hgts. Housing Corp.* (13 Misc 2d 124, affd 7 AD2d 708). In *Green,* service was actually made upon a receptionist, an employee of the defendant corporation, who then gave it to the proper person. In upholding the method of service, the court stated *(supra,* p 125): "While this is not the same thing as manual delivery, in this instance it is the equivalent. Like many other propositions it is a matter of degree. Where the delivery is so close both in time and space that it can be classified as a part of the same act service is effected." It should be emphasized that Special Term upheld service in *Green* despite the fact that the executive vice-president and managing agent was on the premises at the time of service.

It is precisely because of the reasoning in *McDonald* and *Green,* that the holding in the *Isaf* case (32 AD2d 578, *supra),* the remaining authority relied upon by the dissenters, has been so severely criticized. In his Practice Commentaries to

the CPLR, Professor Joseph McLaughlin states (McKinney's Cons Laws of NY, Book 7B, CPLR C311:1, p 256):

"While it may be defensible to define the term 'managing agent' with some strictness when the question is whether the agent has the power to make an admission binding upon the corporation (cf. Spett v. President Monroe Bldg. & Mfg. Corp., 1968, 19 N.Y.2d 203 * * *) or whether his deposition may be read against the corporation (cf. CPLR 3117), no reason is apparent why that same attitude should characterize a determination of who is a managing agent for purposes of accepting process.

"When it is determined that a corporation's activities are such that it is subject to jurisdiction, the service of summons, after all, is simply to give notice to the corporation that it is being sued. Surely, service upon the clerk in Isaf—even if he was but a 'clerk, bookkeeper and timekeeper'—could be sustained upon the theory that his duties had acquainted him with what he should do if served with a summons. It is difficult to understand why, if the freight agent was accepted to be a managing agent, his subordinate should not be similarly regarded when he was left in charge of the office. To hold the service void, despite the fact that the summons went straight away to the general counsel, seems unduly harsh."

Accordingly, we conclude that the service was proper (see *McDonald v Ames Supply Co.,* 22 NY2d 111, *supra; Green v Morningside Hgts. Housing Corp.,* 13 Misc 2d 124, *supra),* and plaintiff's cross motion to strike respondent's affirmative defense should have been granted.

DAMIANI, J. P. (dissenting). The majority has concluded that service of process upon a secretary-receptionist employed by a corporation confers in personam jurisdiction upon the corporation. The exact ground upon which this conclusion is based is unclear, but it appears to be either that since Rose Toro was left in charge of the office in the absence of the corporate principals, she was a "managing agent" within the meaning of CPLR 311 (subd 1), or that the failure of responsible corporate officers to instruct her not to accept process "raised a strong inference that she had the authority to accept service of process for" the Thomas Crimmins Construction Co. I do not agree.

Because plaintiff chose to obtain jurisdiction over the defendant joint venture by serving one of the corporate joint

venturers, it was required to effectuate service upon that corporation pursuant to the dictates of CPLR 311 (subd 1).

The public policy of this State requires strict compliance with the service requirements of the CPLR and where the summons is delivered to a person unauthorized to receive the same, the fact that it is subsequently redelivered by that person to the ultimate proper recipient does not operate to validate an otherwise improper service (see *McDonald v Ames Supply Co.*, 22 NY2d 111, 114-116, and cases cited therein). This rule is firmly established and supported by numerous authorities (see *duPont, Glore Forgan & Co. v Chen*, 53 AD2d 812, revd on other grounds 41 NY2d 794). The purpose of this strict policy is to encourage diligence upon the part of process servers and thereby to help insure that defendants in all cases actually receive the summons. Although it may appear to result in an injustice where the proper person eventually receives the summons despite improper service, a contrary rule would promote carelessness in the service of process and increase the risk that defendants in other cases will default because they in fact failed to receive the process. Viewed in this light, it is my opinion that the service of process in the case at bar was improper.

The proof establishes that the recipient of the summons in this case was not an officer, director, cashier or assistant cashier of the corporate joint venturer. Thus, the question of the propriety of the service turns upon whether Rose Toro can be deemed either a general or managing agent or any other agent authorized by appointment to receive service.

In order to determine whether Ms. Toro was an agent, we must first examine the nature of the relationship between master and servant (or employer and employee) and between principal and agent. The distinction between master and servant and principal and agent is difficult to define; the two relationships are essentially similar and the difference between them may be said to be one of degree only (2A CJS, Agency, § 16; see Restatement, Agency 2d, §§ 1, 2). Although both the terms "servant" and "agent" refer to voluntary action under employment and express the idea of rendering service, and although both the servant and the agent are workers for another under an express or implied agreement, there is a genuine distinction between the two (2 NY Jur, Agency, § 3). An agent is employed in a capacity superior to

that of the servant in that he represents his principal in business dealings. He has the power to bind the principal to contracts with third persons and, in general, is entitled to use his discretion as to the means to accomplish the ends for which he is employed. The servant, on the other hand, has no comparable authority to represent his master in business dealings. His service concerns matters of manual or mechanical execution, and he acts without discretion and at the direction of the master, not only as to what is to be done, but how it shall be done (see 2A CJS, Agency, § 16, p 579; 36 NY Jur, Master & Servant, § 4, p 413; 53 Am Jur 2d, Master & Servant, § 3, pp 84-85).

At least since the Field Code of 1848 the law of this State has required that the personal service of a summons on a corporation be made upon only a limited enumerated class of persons, one of whom is the "managing agent" of the corporation (see L 1848, ch 379, § 113, subd 1; Code Civ Pro, § 431; Civ Prac Act, § 228, subd 8). In the 1893 case of *Taylor v Granite State Provident Assn.* (136 NY 343, 346), the Court of Appeals undertook to define the term "managing agent" as used in the laws governing civil practice and adopted the distinction known to the common law as stated above, namely, that "[a] managing agent must be some person invested by the corporation with general powers involving the exercise of judgment and discretion" as distinguished from a mere employee "who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it" (see, also, Ann., 71 ALR2d 178). The *Taylor* case has never been overruled and was cited with approval by the Appellate Division, First Department, as recently as 1976 (see *Jacobs v Zurich Ins. Co.,* 53 AD2d 524, 525, mot to dismiss app granted 40 NY 2d 844).

Applying these rules to the evidence adduced at the hearing, it is my opinion that, as a matter of law, Rose Toro was not a "managing or general agent" as those terms are used in CPLR 311. She was a receptionist and typist who characterized herself as an "all purpose type of executive-type of secretary" whose job it was to answer the telephone and perform secretarial tasks for the persons employed in the offices of the corporation. There was no showing that she had the power to act on behalf of the corporation in its business dealings or that she was cloaked with the discretion to act on behalf of the corporation, which is the hallmark of an agent

(see *Taylor v Granite State Provident Assn.,* 136 NY 343, 346, *supra; Oustecky v Farmingdale Lanes,* 41 Misc 2d 979, 980).

A clear illustration of the application of these principles is the case of *Isaf v Pennsylvania R. R. Co.* (32 AD2d 578), in which the plaintiff attempted to serve a summons upon the railroad at one of its stations. The process server went to the office of the freight agent, and when told that the agent was out he served the chief clerk of the office who was informed of the purpose of the process server's visit and who thereupon stated that he would accept service of the papers. Special Term held that the chief clerk was a managing agent within the meaning of CPLR 311 since he was in charge of the office when the freight agent was absent. The Appellate Division, Third Department, reversed and dismissed the complaint holding that the absence of the freight agent from the office did not elevate the chief clerk to the position of a "managing agent" upon whom valid service could be made. This was so because the duties of the chief clerk did not require the exercise of judgment and discretion which the law deems characteristic of an agent.

The majority, in criticizing the *Isaf* case *(supra),* cites the McKinney's Practice Commentaries (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C311:1, p 256), to the effect that although a certain person who is left in temporary charge of an office in the absence of a superior may not in fact or law be a managing or general agent within the commonly accepted definition of those terms, there is "no reason" not to treat such a person as a "managing agent for purposes of accepting process." With all due deference to the majority and to Professor McLaughlin, there is indeed a reason why service upon such a person should be held invalid. The Legislature, in drafting CPLR 311, provided that service might be made on a number of persons in the employ of the corporation to be served. Included among those persons are general and managing agents and not included are secretaries and receptionists. The obvious purpose of this requirement is to make certain that the summons comes into the hands of persons in positions of authority within the corporation, thereby insuring that it will receive and act upon the process.

By its decision, the majority is drastically redefining the meaning of the term "managing agent" which, until now, has received but one interpretation in the jurisprudence of this

State for more than 130 years. The majority in effect holds that a managing agent for the purpose of accepting process need not be a person invested by the corporation with discretion to act on its behalf, but instead can be any person left in charge of the office while the responsible corporate officials are absent. Under this theory, service upon a janitor left in sole charge of a corporate office after business hours would be sufficient. Such a result was never intended by the Legislature.

Attempts to distort the long-established meaning of the descriptive words used in the service of process statutes are not a new phenomenon. Generally, however, the courts have resisted the temptation to rewrite the law in order to reach a result which they considered desirable in a particular case. In *Eisenhofer v New York Zeitung Pub. & Print. Co.* (91 App Div 94) the plaintiff argued for an expansive reading of the term "cashier" as used in the section governing service on corporations. At common law a corporate cashier is the financial agent of the corporation, having charge of its funds and the right to control those funds to the exclusion of every other person (see *Winslow v Staten Is. R. T. R. R. Co.,* 51 Hun 298; *Oustecky v Farmingdale Lanes,* 41 Misc 2d 979, 980, *supra).* The plaintiff served process upon a clerk who received the price of newspapers which he sold for the defendant in one of its departments. Plaintiff argued that this person should be deemed a cashier within the meaning of the statute, especially since the process was subsequently transmitted to a proper person. In language which is equally applicable here, Justice McLaughlin, writing for a unanimous Appellate Division, First Department, stated that: "the Legislature has seen fit to prescribe the manner in which jurisdiction of a domestic corporation may be obtained, and where it is decreed that jurisdiction can be obtained only in a certain way, that way must be followed to the exclusion of all others, and, unless it is, the service is ineffectual for any purpose. The Legislature has the power to say how jurisdiction of a corporation can be obtained. It has so declared, and it is for the courts to enforce its mandate and not prescribe some other one. To say that service of process upon some one not authorized by statute is good, because it ultimately reaches the person intended, is to constitute the courts a legislative body instead of one authorized to construe and enforce statutes made by the Legislature" *(Eisenhofer,* 91 App Div 94, 95-96, *supra).*

In short, the statutory wording of CPLR 311 reflects a carefully considered enumeration of the persons entitled to receive process on behalf of a corporation and the courts should not alter or expand that class by judicial interpretation.

In this connection it is pertinent to note that when originally adopted (L 1962, ch 308, eff Sept. 1, 1963), the provisions of CPLR 308 regarding personal service on an individual were substantially as strict as those regarding personal service on corporations under CPLR 311. In 1970, however, CPLR 308 was amended to provide in subdivision 2 thereof that personal service on a natural person might be made by delivering the summons to a person of suitable age and discretion at the defendant's actual place of business, dwelling place or abode and thereafter mailing a copy of the summons to the person at his last known residence (L 1970, ch 852, § 1). Perhaps the time has come for a similar liberalization of the method by which service may be effected upon a corporation. On the other hand plaintiff could just as easily have obtained in personam jurisdiction over the respondent by serving the corporate joint venturer through the Secretary of State pursuant to section 304 and subdivision (b) of section 306 of the Business Corporation Law, but it did not do so. Suffice it to say that the remedy, if necessary, lies solely within the power of the Legislature.

The case of *Green v Morningside Hgts. Housing Corp.* (13 Misc 2d 124, 125, affd 7 AD2d 708), relied upon by the majority, is simply authority for the limited proposition that where one of the enumerated persons entitled to receive service on behalf of a corporation is present in the office, is avoiding service, and the process server delivers the summons to a receptionist who immediately redelivers it to the proper person, service will be upheld because "the delivery [was] so close both in time and space that it can be classified as a part of the same act". It must be emphasized that the facts of the instant case are drastically different from those in *Green,* where the proper persons were on the premises and received immediate redelivery of the process. Here, only Ms. Toro was present and eligible persons were *not* avoiding service. Our case is characterized by a complete lack of diligence on the part of the process server to determine who were the proper persons upon whom service on the corporation could be effected and to actually serve one of those persons. The case of

*McDonald v Ames Supply Co.* (22 NY2d 111, *supra*) merely cites *Green,* for the limited proposition stated above.

Where personal service is not made upon one of the enumerated corporate officials, the concluding words of CPLR 311 (subd 1) nevertheless permit service upon "any other agent authorized by appointment or by law to receive service". As no claim is made that Ms. Toro was authorized "by law" to receive service, the question remains as to whether she was authorized "by appointment".

The above-quoted language was added to the statute and became law with the adoption of the CPLR. It was derived from rule 4 (subd [d], par [3]) of the Federal Rules of Civil Procedure (US Code, tit 28, Appendix, see Second Preliminary Report of the Advisory Committee on Practice and Procedure, 1958, p 161). The meaning of the phrase "by appointment" has not been subjected to litigation in New York but it has been extensively interpreted by the Federal courts. In analyzing the Federal cases, it is important to note that at common law the actual authority of a person to act as the agent of another could be created in one of two ways, either *expressly* by written or spoken words, or *impliedly,* from written or spoken words or from other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to so act on the principal's account (Restatement, Agency 2d, § 26; 3 Am Jur 2d, Agency, §§ 18, 69, 71).

The great weight of Federal authority holds that in using the word "appointment" concerning the creation of an agency for the service of process, the rule requires the principal to make an express grant of power to receive process (see Ann. 26 ALR2d 1086; Ann 11 L Ed 2d 1036; *Fleming v Malouf,* 7 FRD 56; *Szabo v Keeshin Motor Express Co.,* 10 FRD 275; *Hardy v O'Daniel,* 16 FRD 355; *Morfessis v Marvins Credit,* 77 A2d 178 [DC]; *Schwarz v Thomas,* 222 F2d 305; *Nelson v Swift,* 271 F2d 504; *Foster v Lewis,* 78 Nev 330; cf. *Punke v Brody,* 17 Wis 2d 9; *Howard v Preston,* 30 Wis 2d 663; contra *Cohen v Physical Culture Shoe Co.,* 28 F Supp 679). In my judgment the rule enunciated by the foregoing authorities is sound and should be followed in construing our statute for the reason that the use of the word "appointment" conveys an intention to require an affirmative manifestation of intent by the principal in order to confer upon another authority to act as an agent for the receipt of process on his behalf and is

inconsistent with the notion that a matter of such grave consequence could be accomplished by mere implication.

The evidence in this case fails to establish an express appointment, either orally or in writing, of Ms. Toro as the corporation's agent for the acceptance of process. She testified, without contradiction, that no one in a position of authority in the corporation had ever told her to accept process. As to a written designation, CPLR 318 provides as follows:

"Designation of agent for service

"A person may be designated by a natural person, corporation or partnership as an agent for service in a writing with the consent of the agent endorsed thereon. The writing shall be filed in the office of the clerk of the county in which the principal to be served resides or has its principal office. The designation shall remain in effect for three years from such filing unless it has been revoked by the filing of a revocation, or by the death, judicial declaration of incompetency or legal termination of the agent or principal."

Pursuant to this rule the designation of a person as an agent for the service of process must be in writing, must have the consent of the agent indorsed thereon, and must be filed in the office of the County Clerk. There is no evidence in this case of such a written designation. However, it has been held that a written designation of an agent for service of process may be accomplished in other ways. Thus, such a designation may be accomplished by the terms of a contract even though the contract is not filed (*National Rental v Szukhent*, 375 US 311; *Fairfield Lease Corp. v Empire Employees Sunshine Club*, 74 Misc 2d 328). However, there is no allegation that the brokerage contract authorized service upon Ms. Toro. Such an agency for service of process may also be accomplished by the use of the statutory short-form power of attorney authorized by subdivision 6 of section 5-1502H of the General Obligations Law (*Torre v Grasso*, 11 Misc 2d 275), but here again there is no evidence that such a power of attorney was ever executed.

Contrary to the foregoing, the majority appears to hold that an appointment to act as an agent for the service of process need not be express and arises by implication from the fact that Ms. Toro's superiors never rebuked her for receiving process on prior occasions. Even if public policy permitted an agency for the receipt of the service of process to be created by implication, the facts of this case are insufficient to spell out such an implied grant of authority.

Under the common law an agency can be created by a manifestation of intent by the principal, communicated to the agent, that the former is willing to have the latter act on his account (Restatement, Agency 2d, § 26, Comment *a).* Under certain circumstances the manifestation of intent of the principal may consist of acquiescence in and a failure to object to unauthorized conduct (2A CJS, Agency, § 56). If in view of the relations between the principal and agent, a reasonable person in the position of the principal, knowing of unauthorized acts and not wishing to be bound thereby, would do something to indicate his dissent, the agent may infer from a failure to raise objection that the principal wishes him to continue to act (Restatement, Agency 2d, § 26, Comment *d).* At first glance this theory has a superficial allure, but upon closer analysis it does not apply to this case.

The act of receiving process is essentially passive. The process server decides whether he will leave the summons with the particular recipient and the latter does no more than take it in hand. The law of this State permits only two methods of objecting to the service of process, neither of which involves rebuking the recipient for an unauthorized acceptance of the summons. Either the defendant can move to dismiss for lack of personal jurisdiction or he can assert that defense in his answer (CPLR 3211, subd [e]). Acquiescence in the unauthorized receipt of process would consist of the principal's failing to raise the jurisdictional defense. Under the facts of this case an implied authorization for the receipt of the instant summons by Ms. Toro would be spelled out only if it was proven that her employer, the Thomas Crimmins Construction Co., had failed to assert the jurisdictional defense in the prior cases in which Ms. Toro received summonses *and* this failure to object to jurisdiction had somehow been communicated to her (cf. *Neitzke v Kraft-Phenix Dairies,* 214 Wis 441, 451). The burden of proving jurisdiction is on the party asserting it and when challenged on jurisdiction such party must sustain its burden by preponderating proof *(Saratoga Harness Racing Assn. v Moss,* 26 AD2d 486, 490, affd 20 NY2d 733). In the case at bar plaintiff failed to prove acquiescence by the employer in the prior receipt of process by Ms. Toro. Without such prior acquiescence no authorization by the corporation for her to receive the instant summons can be implied.

Similarly there is no proof of ratification in this case.

Ratification is the affirmance by a person of a prior act of another which did not bind him because it was done without his authority, but which was done on his account, thus giving effect to the act as if originally authorized (Restatement, Agency 2d, § 82; 3 Am Jur 2d, Agency, § 160; 2A CJS, Agency, § 63). Affirmance by the principal consists of a manifestation of intent to treat the unauthorized act as authorized (Restatement, Agency 2d, § 83). The employer has not manifested, by any action or inaction, an intent to treat Ms. Toro's acceptance of the instant summons as authorized. In fact, respondent has specifically moved to dismiss upon the ground that her receipt of the summons was unauthorized.

Plaintiff's final contention is that the respondent should be estopped from asserting the defense of lack of jurisdiction by reason of the fact that Ms. Toro had never been instructed to stop accepting service of process. The theory of agency by estoppel is also known as the doctrine of "apparent authority" (2 NY Jur, Agency, § 87). Under this doctrine a principal is bound·to a third person by the act of his agent in excess or abuse of the latter's actual authority where the third person believes, and has the right to believe, that the agent was acting within and not exceeding his authority and the third person would be prejudiced if the act was not considered that of the principal. Apparent or ostensible authority, or agency by estoppel, is created only by acts or neglect of the person sought to be charged as principal, and the third party dealing with the ostensible agent must have known of and relied upon such acts or omissions of the principal and such reliance must be in good faith and in the exercise of reasonable prudence (Perry v New York Life Ins. Co., 22 NYS2d 696, 701-702; Walsh v Hartford Fire Ins. Co., 73 NY 5, 10; Bickford v Menier, 107 NY 490). Unauthorized representations by the ostensible agent at the time of the transaction as to the scope of his or her authority cannot be a basis for the application of the doctrine of apparent authority (2 NY Jur, Agency, § 89). It is well established that the validity of service by the plaintiff cannot be made to turn upon any statement made by the person who actually received the summons at the time of service (Coler v Pittsburgh Bridge Co., 146 NY 281, 283; Loeb v Star & Herald Co., 187 App Div 175, 178; Jacobs v Zurich Ins. Co., 53 AD2d 524, supra), and thus Ms. Toro's assertion that she was authorized to receive process was not binding upon the corporation. In order to satisfy its burden of proof

with respect to apparent authority or agency by estoppel, the plaintiff was required to show that it knew of and relied upon definite conduct or other manifestations of the corporate joint venturer justifying it in believing that Ms. Toro was authorized to accept service on its behalf. Indeed, plaintiff failed to prove at the very least that its process server had knowledge of the corporation's alleged failure to rebuke Ms. Toro for accepting process on prior occasions and that he relied upon that fact when he chose to serve her rather than returning at a time when the persons enumerated in the statute were present at the corporate headquarters.

I agree with Special Term that plaintiff failed to prove compliance with the service requirements of CPLR 311 and accordingly I would affirm.

GULOTTA and MARTUSCELLO, JJ., concur with SUOZZI, J.; DAMIANI, J. P., dissents and votes to affirm the order, with an opinion, in which TITONE, J., concurs.

Order of the Supreme Court, Westchester County, dated February 24, 1978, reversed, on the law, with costs, and cross motion granted.