OPINION OF THE COURT
Benjamin F. Nolan, J.
After institution of this nonpayment summary proceeding against the commercial tenant, a default judgment was entered and a warrant of eviction issued. Before the warrant *271 was executed, tenant moved by order to show cause with a stay to vacate its default, alleging lack of jurisdiction due to improper service of process. The warrant was executed on the morning of December 18, 1979. The order to show cause was signed that same morning but was served too late to stay the eviction. Thereafter, tenant forcibly re-entered the business premises without any legal process. Landlord then moved for an order vacating the stay and directing tenant to quit occupancy of the premises as a trespasser. In opposing landlord’s motion, tenant challenged the propriety and timeliness of the warrant. This court consolidated both motions and heard argument on the record.
SERVICE OF PROCESS
Counsel for landlord served process upon the brother of the president of the tenant corporation at the corporation’s principal place of business on November 8, 1979, identifying the brother in the affidavit of service as the corporation’s managing agent. The corporate president testified that his brother was neither the managing agent nor any other corporate officer, but was only an employee, namely the dispatcher at the principal place of the corporation’s trucking business. Counsel for landlord testified that the brother identified himself as an officer of the corporation and was manifestly in charge, exercising supervision over employees and business operations. From prior dealings, counsel for landlord knew the brother to be a corporate principal, who had ordered him off the business premises when he attempted to serve process to commence an earlier proceeding. As a result, counsel for landlord brought police officers with him this time. Nevertheless, the brother refused to accept process, whereupon the papers were left nearby. The brother did not testify at the hearing and no explanation was offered for his absence. This court believed the testimony of counsel for landlord and disbelieved the testimony of the corporation’s president, particularly his claim that he had not been aware that this proceeding was commenced, despite the fact that he admitted at the hearing that he had received a letter, dated November 9, 1979, informing him that an eviction proceeding had been commenced.
 The method of obtaining jurisdiction over a corporation is prescribed by CPLR 311. It was the intention of the draftsmen of CPLR 311 that the statute be liberally construed *272 to permit acquisition of jurisdiction whenever proper notice of a pending action is given to a corporation (1 Weinstein-KornMiller, NY Civ Prac, par 311.01; 1958 Report of the Temporary Commission on the Courts, p 161). Reflecting this intent, service has been upheld upon a corporate representative who did not possess any of the titles specified in the statute, but was nevertheless a person invested with or delegated general powers involving the exercise of judgment and discretion (Taylor v Granite State Provident Assn., 136 NY 343, 346; Fischer v Seamen’s Church Inst, of N. Y., 275 App Div 947); or, who possessed sufficient character and rank to make it reasonably certain that notice to him was notice to the corporation (Tauza v Susquehanna Coal Co., 220 NY 259, 269; Barrett v American Tel. & Tel. Co., 138 NY 491, 493; Sullivan Realty Organization v Syart Trading Corp., 68 AD2d 756, 761), or, whose manifest supervisory authority and assertion of that authority justified the conclusion that he was acting as or holding out as a managing agent. (Buckner v D & E Motors, 53 Misc 2d 382.) The court will be responsive to the substance rather than the form, especially where (as here) it is obvious that a corporation was actively resisting service of process and where service was made at the principal place of business of the tenant corporation. (See Colbert v International Security Bur., 70 AD2d 945, citing Taylor v Granite State Provident Assn., supra; Jacobs v Zurich Ins. Co., 53 AD2d 524, mot to dismiss app granted 40 NY2d 844; Sullivan Realty Organization v Syart Trading Corp., supra.) Much the same liberality of construction is found in local Federal cases where the thrust is away from formalism and towards a greater reliance upon reality. (1 Weinstein-Korn-Miller, NY Civ Prac, par 311.04; Koninklijke Luchtvaart Maatschappij N. V. v CurtissWright Corp., 17 FRD 49, 51; Boryk v de Havilland Aircraft Co., 341 F2d 666; Montclair Electronics v Electra Midland Corp., 326 F Supp 839.) And, leaving process nearby is entirely proper when service is resisted. (Buscher v Ehrich, 12 AD2d 887; Chernick v Rodriguez, 2 Misc 2d 891; Levine v National Transp. Co., 204 Misc 202.) A process server has a right to receive co-operation from corporate representatives, and where it is lacking, the court will protect a petitioner from deceptive maneuvers designed to frustrate the process server, and defeat justice. (See Belofatto v Marsen Realty Corp., 62 Misc 2d 922.)
This court concludes that the process server acted reason *273 ably and diligently in attempting to fulfill the statutory mandate and, that the corporation was lawfully served. (See McDonald v Ames Supply Co., 22 NY2d 111, 115-116.)
TENDER PRIOR TO ISSUANCE OF THE WARRANT
The proffer of rent prior to issuance of the warrant was not a lawful tender, having been for a sum less than what was due, having been untimely, and having been made on a check of different corporation than tenant. (Iltit Assoc. v Sterner, 63 AD2d 600; 733 Park Ave. Agency v Shashoua, NYU, Sept. 22, 1978, p 12, col 5.)
TIMELINESS OF EXECUTION OF THE WARRANT OF EVICTION
Tenant contended that the warrant was executed prior to the expiration of the 72-hour notice period. The Marshal testified that he mailed a copy of the 72-hour notice to tenant on Monday, December 10, 1979, after his process server served a copy at tenant’s business premises. Counsel for tenant affirmed that the president of the tenant corporation informed him on December 13, 1979, that he had received the 72-hour notice in the mail. Section 5-2 of the New York City Marshals Handbook of Regulations, 1978, issued by the New York City Department of Investigations, provides that "in determining the 72 hour period, the running time of the notice shall begin the day following the date of service, posting, or mailing, whichever is last, and shall not include Saturdays, Sundays or holidays.” This is a clear exposition of the law. Counsel for tenant argued that "if the 72 hour notice was served on Thursday, December 13, 1979, the Marshal’s eviction could not take place until Wednesday, December 19, 1979,” the day after the eviction actually took place. What counsel did in the foregoing argument was to erroneously use the date of the receipt of the notice instead of the date of its "service, posting or mailing” to commence the tolling of the 72 hours. This court believes the testimony of the Marshal and finds that the notice was mailed on Monday, December 10, 1979. Tenant was thus legally evictable as early as December 14, 1979. It follows then that the eventual execution of the warrant on December 18, 1979 was timely.
VALIDITY OF THE EXECUTION OF THE WARRANT OF EVICTION
On the morning of December 18, 1979, the Marshal *274 executed the warrant at tenant’s place of business by changing the locks and providing landlord with a certificate of repossession. The Marshal did not remove tenant’s property from the premises because landlord did not direct him to do so. Contrary to the contentions of tenant, this was a valid execution of the warrant. It was a legal possession, as opposed to a complete eviction. Section 6-2 of the Marshals Handbook of Regulations provides that "the distinction between an eviction and a legal possession is that in an eviction, both the tenant and his property are removed from the premises, whereas in a legal possession, only the tenant is removed and the property remains on the premises, under the care and control of the landlord as bailee for the tenant.” The warrant was executed just prior to 9:30 a.m. on the morning of December 18, 1979. During its execution, tenant’s counsel informed the Marshal by phone that two of tenant’s employees were in court at that very moment to pick up an order to show cause containing a stay of eviction which had been left with the court the day before. The Marshal, nevertheless, went ahead with the eviction and was absolutely correct in doing so. He was not obligated to stop the eviction unless and until he was served with a copy of a valid order containing a valid stay. The Marshal was not served with the order to show cause containing a stay until 10:20 a.m. on December 18, 1979, when he returned to his office following his execution of the warrant an hour earlier.
TENANT'S FORCIBLE RE-ENTRY INTO THE PREMISES
Shortly after the order to show cause was served on the Marshal, tenant broke the new locks and re-entered the premises by force without any legal process. Nothing in the order to show cause authorized this unlawful action. And, it was not authorized because the Marshal, at the time of the execution of the warrant, expressed the belief that landlord would probably permit tenant to return to the premises if an order to show cause was subsequently served upon him. The Marshal’s statement was not binding upon landlord, and, it in no way tarnished the lawful execution of the warrant.
TENANT'S VACILLATION IN OBTAINING AN ORDER TO SHOW CAUSE
Tenant was first made aware that an eviction proceeding was commenced when it was served with process on November *275 8, 1979; and, it was reminded of this when it received landlord’s letter of November 9, 1979. During the first week in December, 1979, tenant’s counsel searched court records and verified that a petition and notice of petition had been filed, but took no action of any kind. On December 13, 1979, tenant’s president informed counsel that tenant had received a 72-hour notice. At this point, counsel for tenant drew up an order to show cause, had the underlying affidavit executed by tenant’s president the next day and turned it over to clerical services on December 17, 1979. The order to show cause was signed the next day — too late however to stay the execution of the warrant. Tenant and its counsel had none but themselves to blame for their cavalier treatment of this emergency.
CONCLUSION
Even as counsel for tenant called upon this court to exercise its discretion in favor of tenant, he admonished this court that even if tenant is now on the premises as a trespasser, this court cannot order tenant off the premises because, pursuant to the holding in Matter of Sweet v Sanella (46 AD2d 688), a warrant of eviction once executed cannot be re-executed again. Without addressing what this court can or cannot do in the face of Matter of Sweet v Sanella (supra), this tenant is not deserving of the favorable exercise of this court’s discretion. Besides brashly violating a lawfully executed warrant of this court, tenant has shown neither excusable default, nor a meritorious defense to this summary proceeding.
Accordingly, landlord’s motion is granted. Tenant’s motion to vacate its default is denied, and the stay of the order of December 18, 1979, is vacated. (New York City Housing Auth. v Torres, 61 AD2d 681; Iltit Assoc. v Sterner, 63 AD2d 600 supra; 733 Park Ave. Agency v Shashoua, NYU, Sept. 22, 1978, p 12, col 5, supra; Avset Seventh Corp. v Bollotin, NYU, May 29, 1978, p 6, col 4.) Tenant shall have 10 days from the date a copy of this order is served by certified mail upon its president and its counsel to vacate the premises.