DAI NIPPON PRINTING CO.,
LTD., Plaintiff,

v.

MELROSE PUBLISHING CO.,
INC., Defendant.

No. 86 Civ. 4816 (RWS).

United States District Court,
S.D. New York.

Nov. 18, 1986.

Graham & James, New York City, for plaintiff; Victor C. Murphy, Sandra L. Golvin, of counsel.

Lindemann & Lindemann, P.C., New York City, for defendant; Stephen W. Lindemann, Linda Mandel Gates, of counsel.

SWEET, District Judge.

Defendant Melrose Publishing Co., Inc. ("Melrose") has moved this court to dismiss the action against it brought by plaintiff Dai Nippon Printing Co., Ltd. ("Dai Nippon"). Melrose asserts four grounds for dismissal pursuant to Fed.R.Civ.P. 12: lack of personal jurisdiction, improper venue, insufficiency of process, and failure to state a claim upon which relief can be granted. The facts are set forth in the pleadings and the submissions by the parties are not in dispute except as noted. For the reasons given below, Melrose's motion is denied.

**Facts**

Dai Nippon is a Japanese printing company with its principal place of business in Tokyo. Dai Nippon has printing facilities only in Japan. However, it has a wholly-

owned subsidiary, Dai Nippon America, through which it solicits contracts and services clients in the United States. Dai Nippon America is a New York corporation with its principal place of business in New York City.

In May, 1984, Dai Nippon America was contacted by Melrose, a California publishing company with its principal place of business in Los Angeles. Melrose requested price quotes for the printing of a book with photographs entitled "Paper Dolls." Price quotes on all of the various components of the printing and delivery of 17,500 copies of the book were sent to the president of Melrose, Jeff Dunas ("Dunas"), who was at the time conducting business in Paris, France. The prices quoted were accepted by Dunas and preliminary work on the book began.

Dunas returned from Paris to New York City in the fall of 1984. Dunas spent most of that fall in New York City, living in and conducting business from a condominium apartment that he and his family own. In addition to Dai Nippon America, other parties involved in the publication of the book lived and worked in New York: Art Kane, the author and photographer; James Miho, the designer; and Grove Press, Inc., the distributor. Dunas and at times Dai Nippon America employees met with these parties throughout the fall.

Problems with the publication of the book began in September, 1984 when sample books were not printed and shipped by Dai Nippon in time for a book fair in Germany. Responsibility for this, other delays, customs problems and technical problems was never accepted by either party. Dunas claims that all problems were purely printing problems while Dai Nippon asserts that Dunas did not properly supervise the overall publishing of the book.

In early November, 1984, immediately prior to Dai Nippon's shipment of copies of the book from Japan, it was discovered that Dunas had never sent Dai Nippon a purchase order. Dai Nippon refused to ship until the purchase order was executed. Dai Nippon America wrote to Dunas on November 6, 1984 at his New York address regarding this problem, and Dunas responded that day with an executed purchase order.

Other delays and technical problems continued through the winter of 1985. Throughout most of this period, Dunas was in New York actively negotiating and meeting with Dai Nippon America. Most of the correspondence between the two went from Dai Nippon America's New York City office to Dunas' apartment. Occasional letters to and from California indicate that Dunas also spent time conducting business there.

The books were eventually delivered to distributors, book clubs, and stores in Europe, Baltimore and New York. The terms of the contract called for payments to commence ninety days after the dates on the bills of lading. Payments were never made according to the contract.

Dunas and Dai Nippon America met in New York City in April, 1985 and agreed to a modified payment schedule. Some monies were paid by Dunas, but the payment schedule was not followed. Negotiations between the parties, both in meetings in New York City and correspondence with Dunas in California, continued until June, 1986. This correspondence indicates that Dai Nippon America was planning to bring a legal action against Melrose in New York and that such action had been threatened throughout the year of negotiations.

On June 16, 1986, Melrose filed suit against Dai Nippon America in the District Court for the Central District of California. Melrose claims $121,000 in damages for breach of contract, unfair competition and "negligent interference with prospective economic advantage." That action has been stayed pending this court's decision on the current motion.

On June 20, 1986 a process server acting on behalf of Dai Nippon went to 9021 Melrose Avenue, Los Angeles, California to serve Melrose with a summons and complaint for the instant action. The process server went to a suite at that address

which bore a sign reading, "Melrose Publishing Company, Inc." She entered the suite and asked the receptionist to direct her to Dunas or another officer of Melrose. The receptionist went into an adjoining room where two men were playing pool. She addressed one of the men as "Jeff" and informed him that a messenger was outside. A man who identified himself as "James" came out and asked the process server what she had to deliver. It was conceded at oral argument that this man was James Marfuggi ("Marfuggi"), who has signed letters submitted as part of the record as vice-president of Melrose. When the process server informed him that she had legal documents for Melrose, Marfuggi refused to accept service and walked away. The process server placed the documents on the receptionist's desk and left the office.

## I. Personal Jurisdiction and Venue

Personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the district court sits. *United States v. First Nat'l City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). Until an evidentiary hearing is held, a plaintiff can defeat a motion to dismiss on the basis of lack of personal jurisdiction by making "only a prima facie showing of jurisdiction through its own affidavits and supporting materials [,] ... notwithstanding any controverting presentation by the moving party." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); *Hoffritz For Cutlery v. Amajac, Ltd.*, 763 F.2d at 57. With these authorities in mind, Dai Nippon contends that Civ.Prac.L. § 301 (McKinney 1972) and § 302(a)(1) (McKinney 1972 & Supp.1986) provide jurisdiction over Melrose.

Section 301 provides: "A court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore." N.Y.Civ.Prac.L. § 301 (McKinney 1972). This keeps alive earlier New York case law "which provided that a corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz For Cutlery v. Armajac, Ltd.*, 763 F.2d at 58 (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)).

In this case, during the entire time Dai Nippon was preparing for and printing the book, Dunas spent most of his time in New York making some related trips to both Europe and California. Dunas conducted business in New York from his apartment and the correspondence between Dai Nippon America and Dunas in New York is voluminous. By letter and in person a substantial amount of negotiation, supervision, and revision of the agreement took place in New York. After the book's publication and continuing until shortly before the initiation of this action, Dunas and Dai Nippon America continued to meet and negotiate by mail concerning payment.

Dunas' business in New York was not confined to its transactions with Dai Nippon America. All of the principal participants in the publishing of the book were in New York: the author, the designer, and the distributor. These contacts when added to Dunas' continued presence in New York, show that Melrose was pursuing its sole corporate function—publishing—"on a scale sufficient to be seen, felt, palpitated and made subject to process." *Laufer v. Ostrow*, 55 N.Y.2d 305, 311, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692, 694 (1982) (quoting *Benware v. Acme Chem. Co.*, 284 A.D. 760, 761, 135 N.Y.S.2d 207, 209 (3d Dep't 1954)).

Additionally, Dai Nippon's affidavits state that the actual contract between the parties was executed in New York upon Dunas' completion of Dai Nippon's purchase order. The situs of the contract will

be considered as a factor in determining jurisdiction. *See Longines-Wittnauer Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 456–57, 261 N.Y.S.2d 8, 18–19, 209 N.E.2d 68, 75 (1965). Here, the formal execution of the contract in New York, while not controlling for the purposes of § 301 jurisdiction, is indicative of Dunas' purposeful activity and presence in the forum.

■ These contacts appear to be at least as substantial as those in *Laufer v. Ostrow*, 55 N.Y.2d at 308, 449 N.Y.S.2d at 457, 434 N.E.2d at 693, in which the New York Court of Appeals found a New Jersey corporation subject under § 301 to the jurisdiction of New York courts "notwithstanding that the corporation accepts all sales at its New Jersey office and has no office, telephone or bank account in New York and notwithstanding that some of the accounts involved in the action are with purchasers outside New York." The necessary contact was that the corporation hired a resident of New York as a sales representative who solicited business both in New York and outside it for several years. Other representatives also serviced accounts inside New York State. In this case, Melrose's continual presence in New York, its maintenance of a residence/office, and its transaction of substantial amounts of publishing business relative to its size, amount to a presence that is "purposeful and continuing rather than casual and limited in time," as required by *Laufer*. *Id.* at 312, 449 N.Y.S.2d at 459–60, 434 N.E.2d at 694–96.[1]

*Laufer* also directs the court in deciding the reasonableness of requiring Melrose to defend the action in New York, to look to the volume of business transacted in New York. *Id.* at 312, 449 N.Y.S.2d at 460, 434 N.E.2d at 696. Publication of the book involved sums of money that were significant for a company of Melrose's size and occupied most of Dunas' attention for an extended period of time, thus evidencing its importance to Melrose's business. Additionally, Dunas' maintenance of a residence/office in New York and his proclivity to travelling demonstrate that there is no "unfairness or unreasonableness in allowing the action to be brought in New York." *Id.* at 312, 449 N.Y.S.2d at 460, 434 N.E.2d at 696.

New York's long-arm statute, Civ.Prac.L. § 302 (McKinney 1972 & Supp.1986), permits a court to exercise *in personam* jurisdiction over a non-domiciliary who "transacts any business within the state" as to a cause of action *arising from that business.* General jurisdiction under § 301 is broader than this transactional standard, *see George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 651–52, 394 N.Y.S.2d 844, 846, 363 N.E.2d 551, 552 (1977), and thus the latter is satisfied. Melrose transacted considerable business in New York out of which the current action arose. *See Amer. Contract Designers, Inc. v. Cliffside, Inc.*, 458 F.Supp. 735, 737 (S.D.N.Y.1978) (a single brief visit by a high level corporate officer can amount to a transaction of business on which to base § 302 jurisdiction).

■ The venue in which Melrose may be sued is controlled by 28 U.S.C. § 1391 which provides that a "corporation may be sued in any judicial district in which it is ... doing business ...." Because Melrose has been found to be "doing business" in New York within the meaning of Civ. Prac.L. § 301, venue in New York is also proper. *Sterling Television Presentations, Inc. v. Shintron Co.*, 454 F.Supp. 183, 190 (S.D.N.Y.1978).

1. The facts at hand present a more substantial basis on which to base jurisdiction than those in *Dero Enter., Inc. v. Georgia Girl Fashions, Inc.*, 598 F.Supp. 318 (S.D.N.Y.1984), where the only in-state activities of the defendant were 70 to 80 wholesale buying trips. Here, in addition to the considerable amount of time spent by Dunas in New York, the corporation had a local base from which it conducted business and Dunas transacted business on a broader level and with other parties. Dunas' acts also amount to more than "purchases and related trips" which the Supreme Court held to be insufficient, *alone,* to confer jurisdiction where the cause of action *does not* arise out of the transaction or contract in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Dai Nippon has made the necessary *prima facie* showing that Melrose has sufficient contacts within the State of New York to establish both *in personam* jurisdiction and venue, and, consequently, Melrose's attacks on these grounds fail. Of course, at trial Dai Nippon still must establish such jurisdiction by a preponderance of the evidence. *Marine Midland Bank, N.A., v. Miller*, 664 F.2d at 904.

## II. Service of Process

The Federal Rules of Civil Procedure provide that service be made upon a corporation pursuant to either the law of the forum state, a federal statute or the federal rule. Fed.R.Civ.P. 4. Both parties agree that New York law controls the issue of service in this case.

N.Y.Civ.Prac.L. § 311 (McKinney Supp. 1986) provides that personal service upon a domestic or foreign corporation be made by delivering the summons to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." The aim of the statute is to provide notice of the commencement of suit to the corporation and in furtherance of this goal the statute is to be liberally construed. *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 271, 428 N.Y.S.2d 890, 893, 406 N.E.2d 747, 750 (1980).

Viewing the facts of the case in a light favorable to the non-moving party, Dai Nippon, the affidavit of the process server indicates that Melrose attempted to evade service. *See Lehigh Valley Indus. Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975). The process server went to the address and suite identified on Melrose's printed stationery and requested to see an officer of Melrose. An officer, Marfuggi, spoke with her but was uncooperative and refused to accept what the process server had told him were "legal papers for the corporation."

■ The process server acted reasonably when she left the process on the receptionist's desk, given the circumstances, and clearly attempted to comply with the law.

In such a case, service effectively evaded will be held valid when the summons is left in the "general vicinity" of the defendant. *McDonald v. Ames Supply Co.*, 22 N.Y.2d 111, 115, 291 N.Y.S.2d 328, 331, 238 N.E.2d 726, 728 (1968). *See Buscher v. Ehrich*, 12 A.D.2d 887, 888, 209 N.Y.S.2d 941, 942 (4th Dep't 1961) ("Service cannot be evaded by such avoidance and by subsequent reliance upon technicalities."); *Regan v. Tally Ho Trucking Co.*, 103 Misc.2d 269, 272, 425 N.Y.S.2d 725, 727 (Civ.Ct. Bronx County 1980) (When service of a corporation is resisted, court will look to substance rather than form of service; "leaving process nearby is entirely proper").

The process server was entitled to cooperation from Melrose's employees, including Vice-President Marfuggi. *Regan v. Tally Ho Trucking Co.*, 103 Misc.2d at 272, 425 N.Y.S.2d at 727. She acted with due diligence in fulfilling the statutory requirements of § 311 and Melrose will not now be allowed to rely on technicalities. The service effected upon Melrose was valid.

## III. Privity of Contract

Melrose has made a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim based on an assertion that Dai Nippon is not the party Melrose contracted with, but rather, the only contract Melrose entered into was with Dai Nippon America. This motion has been transformed into one for summary judgment pursuant to Rule 56 by the parties' submission and the court's consideration of matters outside the pleadings. Fed.R.Civ.P. 12(b).

■ Melrose's motion is defeated because there is a plain dispute as to material facts. Melrose says that its dealings were exclusively with Dai Nippon America so that it could not have contracted with Dai Nippon Japan. Dai Nippon, on the other hand has submitted an affidavit stating that Melrose completed a purchase order from Dai Nippon and that this was the actual contract. With so fundamental a fact in dispute, the motion for summary judgment is denied.

Melrose's motions are denied.

IT IS SO ORDERED.